*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM MICHAEL BULLOCK,

*Defendant-Appellant.*

No. 07-5632

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 06-00129—Karen K. Caldwell, District Judge.

Submitted: April 25, 2008

Decided and Filed: May 22, 2008

Before: SUHRHEINRICH, CLAY, and COOK, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Douglas G. Benge, JENSEN, CESSNA & BENGE, London, Kentucky, for Appellant.
Brandon W. Marshall, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS,
Lexington, Kentucky, for Appellee.

_____

### OPINION

_____

CLAY, Circuit Judge. Defendant William Michael Bullock ("Bullock") appeals the 18
month sentence imposed by the district court following his guilty plea to possession of a firearm
while subject to a domestic violence order, in violation of 18 U.S.C. § 922(g)(8) (2000), on the basis
of the district court's alleged miscalculation of the advisory United States Sentencing Guidelines
(the "Guidelines") range. In particular, Bullock challenges the district court's application of a four-
point offense level enhancement under § 2K2.1(b)(6) of the Guidelines. For the reasons that follow,
we **AFFIRM** the sentence imposed by the district court.

### I. BACKGROUND

On October 18, 2006, the Sheriff's Office of Pulaski County, Kentucky received complaints
that Bullock had, earlier that day, made threatening telephone calls to the offices of several public
officials, including United States Congressman Harold "Hal" Rogers, Pulaski County Circuit Court
Judge David Trapp, and Pulaski County Circuit Court Clerk George Flynn. According to the

complaints, Bullock stated that he was going to "get rid of" these officials.  Relying on these complaints, the Sheriff's officers obtained an arrest warrant for Bullock.

When the Sheriff's officers arrived at Bullock's residence, a camper located behind his ex-wife's home, they found Bullock alone in the residence with a semi-automatic Norinko, SKS Model, 7.62 x 39 caliber rifle in plain view.  Bullock acknowledged his ownership of the rifle and informed the officers that they could take the weapon.  The officers then seized the firearm and arrested Bullock on state charges of "intimidating a judicial officer" and "terroristic threatening."  These state charges against Bullock were subsequently dismissed.

Further investigation by agents in the United States Bureau of Alcohol, Tobacco, and Firearms revealed that Bullock was subject to a domestic violence order, filed May 3, 2006, in Pulaski County Family Court.  The domestic violence order had not been rescinded and was scheduled to remain in effect until May 2, 2009.

Based on these facts, on October 24, 2006, Bullock was charged in the United States District Court for the Eastern District of Kentucky with possession of a firearm while subject to a domestic violence order, in violation of 18 U.S.C. § 922(g)(8).  Bullock was subsequently convicted of this charge pursuant to a guilty plea.

On May 14, 2007, the district court held Bullock's sentencing hearing.  The district court first considered Bullock's objections to the Presentence Investigation Report (PSR), which had been prepared by the United States Probation Office.  The PSR indicated that the proper Guidelines range recommended for Bullock was 18 to 24 months.  This Guidelines calculation was based on Bullock having a total offense level of 15 with a criminal history category of I.  The PSR computed the total offense level by starting with a base offense level of 14, pursuant to U.S.S.G. § 2K2.1(a)(6)(A), adding four levels, pursuant to U.S.S.G. § 2K2.1(b)(6), for Bullock's possession of a firearm which had the potential to facilitate another felony offense, and then subtracting three levels, pursuant to U.S.S.G. § 3E1.1(a)-(b), for Bullock's acceptance of responsibility.[1]  While Bullock conceded that § 2K2.1(a)(6) provided the appropriate base offense level, Bullock objected to the PSR's application of the § 2K2.1(b)(6) four-level enhancement based on the concern that "theoretically all firearms have the potential to facilitate a felony offense."[2]  J.A. at 23.  The district court overruled this objection, stating:

> [I]n looking at the characteristics of this defendant, particularly the characteristics that led to his [domestic violence order] being entered against him, and consistent with the commentary to the guideline, the Court finds that there is the potential for this firearm to be used in the commission of another crime.  Again, for the reasons elaborated by the Probation Officer, that objection will be overruled.

J.A. at 23.  Adopting the PSR in full, the district court found the advisory Guidelines range for Bullock to be 18 to 24 months.

After determining the advisory Guidelines range, the district court invited Bullock to speak to "any particular factors [he] would have the [c]ourt consider with respect to" 18 U.S.C. § 3553(a).  J.A. at 24.  Bullock then requested that the court sentence him at the lower end of the Guidelines

---

[1] As Bullock was sentenced using the 2006 edition of the United States Sentencing Guidelines Manual, all references to the Guidelines in this opinion are to the 2006 version.

[2] Under Bullock's proposed calculation, his base offense level would be 11 and his criminal history category would remain I.  This calculation produces an advisory Guidelines sentencing range of 8 to 14 months.  *See* U.S.S.G. Sentencing Table (2006).

range. Upon hearing from the government, the district court followed Bullock's request and sentenced him to 18 months imprisonment. The district judge explained that she found this sentence "sufficient but not greater than necessary to comply with the sentencing objectives of" § 3553(a).

On May 17, 2007, Bullock filed this timely appeal.

## II. DISCUSSION

On appeal, Bullock contends that, by adding four points to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(6), the district court engaged in "double counting" because all firearms by definition are capable of facilitating another felony offense. We find this argument to be completely without merit and accordingly affirm the sentence imposed by the district court.

## A. Standard of Review

Post-*Booker* and *Gall*, we continue to review a district court's calculation of the advisory sentencing Guidelines as part of our obligation to determine whether the district court imposed a sentence that is procedurally unreasonable. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007) (directing appellate courts to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range"); *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (finding that one of the three components of the Court's procedural unreasonableness review includes ensuring that the district court "properly calculated the applicable advisory Guidelines range"); *United States v. Lalonde*, 509 F.3d 750, 764 n.5 (6th Cir. 2007) ("Because the district court must properly calculate the advisory Guidelines sentencing range as well as consider the § 3553(a) factors, our review of the district court's Guidelines range calculation is most properly viewed as part of our review of the procedural reasonableness of the sentence."); *United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006). In doing so, we review the district court's factual findings for clear error and its legal conclusions, including its determination of whether a particular Guidelines enhancement applies, *de novo*. *See Lalonde*, 509 F.3d at 763; *United States v. Richardson*, 510 F.3d 622, 625 (6th Cir. 2007).

## B. Analysis

Bullock was convicted for violating 18 U.S.C. § 922(g)(8) which prohibits a person who is subject to a domestic violence restraining order from possessing a firearm. *See* 18 U.S.C. § 922(g)(8). Section 2K2.1(a)(6)(A) of the Guidelines provides a base offense level of 14 for a defendant who is convicted of unlawful possession of a firearm "if the defendant . . . was a prohibited person at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(6)(A). Section 2K2.1(b)(6) further directs:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels. If the resulting offense level is less than level **18**, increase to level **18**.

U.S.S.G. § 2K2.1(b)(6) (emphasis in original). The Official Commentary to the Guidelines provides guidance as to the appropriate application of § 2K2.1(b)(6):

> (A)   *In General* – Subsections (b)(6) and (c)(1) apply if the firearm or ammunitition facilitated or had the potential of facilitating, another felony offense or another offense, respectively.
>
>         * * *

(C)      *Definitions –* "Another felony offense", for purposes of subsection (b)(6), means any federal state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

U.S.S.G. § 2K2.1, comment. (n.14). Relying on this guidance, the district court adopted the PSR's recommendation to apply the § 2K2.1(b)(6) enhancement when sentencing Bullock.

Bullock now argues that the application of the § 2K2.1(b)(6) enhancement to his case amounts to double counting because all firearms have the potential to facilitate another felony offense. In particular, Bullock contends that his punishment is being increased "for mere possession of a firearm, which is the entire basis for the underlying offense." Def. Br. at 9. However, Bullock's argument fails to recognize that, by adopting the PSR's recommendation, the district court was applying the § 2K2.1(b)(6) enhancement not because of the mere theoretical possibility that the firearm would be used in some unspecified crime in the future, but rather because of the very real likelihood that Bullock's possession of the Norinko, SKS Model, 39 caliber rifle facilitated Bullock's threats to "get rid of" several public officials, including a United States Congressman.

Moreover, in the multiple times that we have considered the application of the § 2K2.1(b)(6) enhancement, we have never found it to allow for double counting, and we do not do so today. Section 2K2.1(b)(6) does not advise district judges to punish defendants more severely simply because they have engaged in conduct – unlawful possession of a firearm – which is already prohibited by federal law. On the contrary, § 2K2.1(b)(6) is designed to increase the recommended punishment for those particular defendants whose unlawful firearm possession has created a heightened risk of violence. *See United States v. Burke*, 345 F.3d 416, 427 (6th Cir. 2003) (noting that § 2K2.1(b)(6) "was created in response to a concern about the increased risk of violence when firearms are used or possessed during the commission of another felony" (quoting *United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999))). Thus, we have never found that the § 2K2.1(b)(6) enhancement can be applied simply because there is a theoretical possibility that the firearm may be used to commit a felony at some unspecified future time. Rather, a district court can only apply the enhancement if the government "establish[es], by a preponderance of the evidence, a nexus between the firearm and an independent felony." *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) (internal citations omitted). While the particular independent felony need not be charged, *see id.* at 580 n.2 (citing *United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000)); U.S.S.G. § 2K2.1, comment. (n.14), the felony must be specifically identifiable in order for the government to demonstrate that "the defendant possessed or used a gun in connection with" it. *Richardson*, 510 F.3d at 626; *accord Burke*, 345 F.3d at 427 (quoting *United States v. Hardin*, 248 F.3d 489, 495 (6th Cir. 2001)). After the government has identified a specific felony offense, it must then demonstrate that the defendant used a firearm "in connection with" that offense by showing that "the weapon facilitated or potentially facilitated the felonious conduct or emboldened the defendant during the felonious conduct." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (quoting *United States v. Sanders*, 162 F.3d 396, 404 (6th Cir. 1998)); *accord Burns*, 498 F.3d at 580. By enhancing a defendant's recommended punishment when the government has made such a showing, § 2K2.1(b)(6) does not double count the defendant's unlawful possession of a firearm, but rather reasonably accounts for the increased danger created by the specific circumstances surrounding the defendant's unlawful conduct.

Accordingly, we clarify today that any argument claiming that § 2K2.1(b)(6) permits a sentencing judge to impermissibly double count the defendant's unlawful conduct cannot prevail under our jurisprudence. Furthermore, on *de novo* review of the record in this case, we find that the district court did not err in applying the § 2K2.1(b)(6) enhancement to increase Bullock's base offense level as part of its calculation of the advisory Guidelines range. While the underlying facts

of the case do not show that Bullock used the unlawfully possessed firearm in connection with any Kentucky offenses that satisfy the § 2K2.1(b)(6) definition of "another felony offense," the record clearly demonstrates that Bullock used the firearm in connection with the federal offense of threatening to kill a United States Congressman.

Section 2K2.1(b)(6) only applies if the defendant "possessed any firearm or ammunition in connection with *another felony offense*." U.S.S.G. § 2K2.1(b)(6) (emphasis added). As noted above, the Official Commentary to § 2K2.1(b)(6) explains that "another felony offense" means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term *exceeding one year*." U.S.S.G. § 2K2.1, comment. (n.14) (emphasis added). In the instant case, the only Kentucky offense which the PSR indicates that Bullock's possession of the firearm facilitated – terroristic threatening in the third degree – was not punishable by more than one year of imprisonment.[3] Under Kentucky law, terroristic threatening in the third degree is a Class A misdemeanor. *See* Ky. Rev. Stat. Ann. § 508.080 (2006). For Class A misdemeanors, Kentucky law directs that the term of imprisonment imposed "shall *not exceed* twelve (12) months." Ky. Rev. Stat. Ann. § 532.090 (emphasis added). Thus, by definition, the § 2K2.1(b)(6) enhancement cannot be applied on account of Bullock's use of the firearm in connection with the Kentucky offense of terroristic threatening.

Nevertheless, while the record may not reflect that Bullock used the unlawfully possessed firearm in connection with a Kentucky offense that justifies the application of the § 2K2.1(b)(6) enhancement, it does demonstrate that Bullock possessed the firearm in connection with the clearly qualifying federal offense of threatening to kill a Member of the United States Congress. Under federal law, it is a crime, punishable by up to ten years imprisonment, to "threaten[] to assault, kidnap, or murder, a [Member of Congress] . . . with intent to impede, intimidate or interfere with [the Member of Congress] while engaged in the performance of official duties, or with intent to retaliate against such [Member of Congress] on account of the performance of official duties." 18 U.S.C. § 115(a)(1)(B). In the instant case, Bullock committed such an offense by threatening to "get rid of" Congressman Rogers. Moreover, he was undoubtedly emboldened in the commission of this offense by his possession of a semi-automatic rifle, to which he openly admitted ownership when officers arrived at his home. *See Burns*, 498 F.3d at 580; *Carter*, 355 F.3d at 925. In short, the record adequately demonstrates that Bullock possessed the firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6).

Accordingly, we hold that the district court did not err in applying the § 2K2.1(b)(6) enhancement and thus did not miscalculate the applicable advisory Guidelines range in Bullock's case. Inasmuch as the district court also appears to have treated the Guidelines as advisory, considered the arguments presented by Bullock, and weighed the other sentencing factors set forth in 18 U.S.C. § 3553(a) when sentencing Bullock, we find that the district court imposed a sentence that was procedurally reasonable. *See Gall*, 128 S. Ct. at 597; *Bolds*, 511 F.3d at 581.

### III.  CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is **AFFIRMED**.

---

[3]We do not agree with the suggestion, made by the PSR and the government, that Bullock's threats can be characterized as "intimidation of a participant in the legal process," a Class D Kentucky felony punishable by not less than one year imprisonment. *See* Ky. Rev. Stat. Ann. §§ 524.040 & 532.060 (2006). Kentucky law defines "intimidating a participant in the legal process" as using physical force or threats to influence or attempt to influence a participant in the legal process in certain specified ways. Ky. Rev. Stat. Ann. § 524.040. In the instant case, however, there is no evidence that Bullock was using or even attempting to use his threats to "get rid of" public officials in order to influence those officials in any of the ways specified in the statute.