NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0078n.06
Filed: January 30, 2009

No. 07-5416

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **JERMAINE H. HYLER**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    **COLE, and GIBBONS, Circuit Judges; BELL, District Judge**.[*]

**COLE, Circuit Judge.**   Defendant-Appellant Jermaine H. Hyler appeals his sentence following his plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).   Hyler challenges the district court's application of a four-point offense level enhancement for possession of a firearm in connection with another felony offense under Section 2K2.1(b)(6) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines").   Hyler also claims that the district court miscalculated his sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   For the following reasons, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

## I.  BACKGROUND

### A.     Factual Background

The parties have agreed to the following stipulated facts.  On January 5, 2005, at approximately 6:00 p.m., Metro Nashville Police Department ("MNPD") police cruisers observed Hyler fire a weapon while in the parking lot of Scott's Market, a Nashville, Tennessee gas station and convenience store.  Hyler fired several shots with a handgun pointed out the driver's-side window of a black Buick in the direction of a brown Buick that was exiting the lot.  At the time Hyler fired these shots, Scott's Market was open for business and bystanders were present.

MNPD cruisers immediately converged on Hyler's vehicle, and Hyler attempted to flee the scene.  As the MNPD cruisers blocked Hyler's exit, he tossed a weapon from his car.  Hyler was then taken into custody, and the officers recovered a Smith & Wesson model 49, .38 caliber revolver from the parking lot and discovered four spent shells and one live round in its cylinder.  The officers read Hyler his *Miranda* rights, and Hyler told them that he had shot at the driver of the brown Buick in self-defense because the driver had approached him in a threatening manner while Hyler was sitting in his car.

When the MNPD police vehicles pursued the brown Buick, the car crashed, and the officers apprehended the driver when he tried to escape on foot.  Upon questioning, the driver said that he did not know Hyler and explained that he had fled because he had an outstanding warrant for a probation violation.  The officers then inspected the driver's vehicle and observed two bullet holes in its rear window.

Following Hyler's arrest, the officers transported him to an MNPD facility for booking.

Through a fingerprint comparison, the officers discovered that Hyler had a significant criminal history, which included several felony convictions in Davidson County Criminal Court, including: (1) possession of less than .5 grams of cocaine for resale; (2) felonious possession of a weapon; (3) theft over $10,000; and (4) evading arrest. Hyler's felony status at the time of his arrest was confirmed by a special agent with the Bureau of Alcohol, Tobacco, and Firearms, who had obtained certified copies of the judgment forms for Hyler's past convictions.

## B. Procedural Background

On December 14, 2005, a federal grand jury in the Middle District of Tennessee returned a one-count indictment charging Hyler with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. On December 15, 2005, a warrant was issued for Hyler's arrest, and he was arrested on February 14, 2006. Hyler's conduct also resulted in the following charges in Davidson County Criminal Court, both of which constitute felonies under Tennessee state law: (1) aggravated assault with a deadly weapon in violation of Tenn. Code Ann. § 39-13-102(a)(1)(b); and (2) reckless endangerment with a deadly weapon in violation of Tenn. Code Ann. § 39-13-193(b). However, both charges were subsequently dismissed.

On November 27, 2006, Hyler entered a guilty plea to the indictment. The Department of Probation and Pretrial Services officers prepared a Pre-Sentence Investigation Report ("PSR"), and the parties filed position papers regarding the sentencing factors. The PSR stated that under the Sentencing Guidelines, Hyler qualified for a range of imprisonment of 100 to 125 months, based on a Total Offense Level of 25 and a Criminal History Category of V. The Criminal History Category included a Section 2K2.1(b)(6) four-level enhancement because Hyler had "fir[ed] shots at a vehicle

using the firearm involved in the instant offense, . . . at a market which was open for business and where people were present." (Joint Appendix ("JA") 131); *see* U.S. Sentencing Guidelines Manual § 2K2.1(b)(6) (2006).[1] The Criminal History Category of V was based on Hyler's previous felony convictions.

Hyler objected to the Section 2K2.1(b)(6) four-level enhancement, arguing that he had fired the shots in fear of his life and that the Government had failed to rebut his self-defense argument beyond a reasonable doubt. The district court rejected Hyler's arguments as to the Section 2K2.1(b)(6) enhancement but ultimately reduced Hyler's Total Offense Level by one level for Hyler's post-rehabilitation efforts, bringing the Total Offense Level to 24, resulting in a sentencing range of 92 to 115 months.

Hyler was sentenced on April 2, 2007. The district court applied the Section 2K2.1(b)(6) enhancement and sentenced Hyler to 96 months of imprisonment, to be followed by a three-year period of supervised release, and a special assessment of $100. Hyler filed this timely appeal.

## II. ANALYSIS

### A. Standard of Review

Generally, this Court reviews a district court's factual findings underlying a sentencing decision for clear error and gives due deference to the district court's application of the Sentencing Guidelines to a particular factual situation. *United States v. Ennenga,* 263 F.3d 499, 502 (6th Cir. 2001) (citing *Buford v. United States,* 532 U.S. 59, 66 (2001)). We conduct a de novo review where

---

[1] Prior to the 2006 amendments to the Sentencing Guidelines, Section 2K2.1(b)(6) was numbered as Section 2K2.1(b)(5).

a matter presents strictly a question of law concerning the application of the Sentencing Guidelines. *See United States v. Canestraro,* 282 F.3d 427, 431 (6th Cir. 2002). The more fact-bound the application inquiry, the more deferential the standard of review. *See United States v. Jackson-Randolph,* 282 F.3d 369, 389 (6th Cir. 2002); *United States v. Humphrey,* 279 F.3d 372, 379 n.4 (6th Cir. 2002). Therefore, in this case, we review the factual findings underlying the district court's application of the Section 2K2.1(b)(6) enhancement for clear error, and we review de novo its interpretation and application of the Sentencing Guidelines. *See United States v. Bullock*, 526 F.3d 312, 315-16 (6th Cir. 2008).

**B.      The district court properly applied the Section 2K2.1(b)(6) enhancement**

Hyler has three separate bases for his argument that the district court erred by adding four points to his base offense level under U.S.S.G. § 2K2.1(b)(6). First, he asserts that Application Note 14(C) to Section 2K2.1(b)(6) "excludes application of the enhancement to an underlying offense of possession of a firearm." (Final Brief of Appellant ("App. Br.") 10.) Second, he contends that the district court's application of the Section 2K2.1(b)(6) enhancement to a possession offense was improper where there was no separate and distinct underlying offense. Third, he posits that the district court erred by relying on the facts set forth in the plea agreement to support the application of the Section 2K2.1(b)(6) enhancement because those facts "do not demonstrate beyond a reasonable doubt that [he] committed the acts he was charged with in state court (which were later dismissed); nor do they disprove the theory that [he] was in fear of his life." (App. Br. 15.)

5

1.      *The Section 2K2.1(b)(6) four-level enhancement applies where a defendant both illegally possesses and uses a firearm*

Hyler's argument that Application Note 14(C) to Section 2K2.1(b)(6)'s enhancement "excludes application of the enhancement to an underlying offense of possession of a firearm," (App. Br. 10), misinterprets the provision, which provides:

> "Another felony offense," for purposes of subsection (b)(6), means any federal, state, or local offense, other than the . . . firearms possession . . . offense punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

U.S. Sentencing Guidelines Manual § 2K2.1(b)(6), app. 14(C) (2006). Application Note 14(C) expressly allows a court applying the Section 2K2.1(b)(6) enhancement to consider a defendant's possession of a weapon in addition to that defendant's commission of a second specifically identifiable felony offense. *See Bullock*, 526 F.3d at 317 (finding that the district court properly applied the Section 2K2.1(b)(6) enhancement to increase defendant's base offense level for his conviction under 18 U.S.C. § 922(g) because the defendant used the firearm in connection with a second specifically identifiable federal offense).

2.      *Hyler's acts constitute separate and distinct acts of conduct*

The record shows that in addition to illegally possessing the revolver, Hyler committed the separate felony of reckless endangerment with a deadly weapon by "recklessly engag[ing] in conduct that places or may place another person in imminent danger of death or serious bodily injury," where recklessness is defined as conscious disregard of a "substantial and unjustifiable risk." *See United*

6

*States v. Maxon*, 250 F. App'x 129, 132 (6th Cir. 2007) (citing Tenn. Code Ann. § 39-13-103, and

§ 39-11-302(c)). Though the state charges against Hyler were eventually dismissed, it is undisputed

that Hyler shot at the brown Buick in a crowded parking lot while the driver of that vehicle fled, and

the district court reasonably found that Hyler's actions were an imminent danger to both the driver

of the brown Buick and the other individuals in the vicinity of Scott's Market. *Cf. id.* at 130 (finding

that defendant's act of "testing" his rifle by firing it into the air in the general direction of police

officers placed the officers in imminent danger in violation of Tennessee law); *State v. Fox*, 947

S.W.2d 865, 865-66 (Tenn. Crim. App. 1996) (finding insufficient evidence to sustain defendant's

conviction for reckless endangerment where there was "no testimony that anyone was either in the

tree being fired upon or outside the apartment building in the immediate vicinity of the [defendant]").

We also reject Hyler's argument that the district court's application of the

Section 2K2.1(b)(6) enhancement was improper because there was no "separation of time" between

the offense of conviction—in this case, "possession"—and the firing of the weapon. (App. Br. 14).

Hyler relies on *United States v. Sanders*, 162 F.3d 396, 400 (6th Cir. 1998), in which we reversed

a defendant's sentence applying a Section 2K2.1(b)(5) enhancement because "the mere fact that

Defendant Sanders could also have been prosecuted for a state offense for his conduct at the time

he committed the offense charged in the federal indictment does not support a finding that he

committed another felony offense warranting a Guideline[s] enhancement." However, in *United

States v. King*, 341 F.3d 503, 504 (6th Cir. 2003), in which police officers witnessed the defendant,

an individual with a prior felony conviction, point a loaded pump-action shotgun at another

7

individual in a threatening manner, we specifically rejected defendant's argument on appeal that

*Sanders* negated the applicability of the Section 2K2.1(b)(6) enhancement, explaining:

> the conduct giving rise to the enhancement here was not inevitable upon completion of the underlying offense. After [defendant] retrieved the firearm, he could have refrained from using the weapon to commit assault . . . [but] he chose to point the weapon at [the victim]. Conversely, the defendant in *Sanders* inevitably possessed the firearms upon completion of the burglary because the firearms were among the items taken during the burglary.

*King*, 341 F.3d at 507. Similarly, Hyler's firing of the gun at the brown Buick was not inevitable

upon his possession of the weapon. Consequently, the district court's application of the Section

2K2.1(b)(6) enhancement was not in error. *See id*.

3. *The uncontroverted facts contained in the PSR provide an adequate basis for the application of the Section 2K2.1(b)(6) enhancement*

The district court relied on the uncontroverted facts set forth in the PSR to support its

application of the Section 2K2.1(b)(6) enhancement. Hyler claims that those facts do not

demonstrate beyond a reasonable doubt that he committed the acts with which he was charged in

state court or that his self-defense claim is unsupported by the evidence.

As a threshold matter, this Court has specifically held that the applicable standard for

permissible judicial factfinding in the context of making advisory Sentencing Guidelines calculations

is a "preponderance of the evidence" standard. *See United States v. Sexton*, 512 F.3d 326, 329-30

(6th Cir. 2008) (finding that the district court did not violate defendants' rights by making factual

findings by a preponderance of the evidence in determining defendants' sentencing ranges); *see also*

*United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) (where a district court understands the advisory nature of the Sentencing Guidelines, judicial factfinding done by a preponderance of the evidence is permissible); *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006) (collecting cases) ("By now it is well established that the preponderance standard does not violate *Booker*, so long as the trial court appreciates that the guidelines are advisory, not binding."). The district court properly concluded that the undisputed facts set forth in the PSR establish the occurrence of a second felony (aggravated assault and/or reckless endangerment) by a preponderance of the evidence.

In *United States v. Cook*, we found that "a [court] may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates his sentence" under the Sentencing Guidelines. 453 F.3d at 777. At sentencing, Hyler argued that the Section 2K2.1(b)(6) enhancement did not apply because he had shot at the other car in self-defense. However, the district court noted that the only factual circumstances indicating a reasonable perception of danger were the two bullet holes in the *other* car such that the application of the enhancement was proper. Further, Tennessee law on reckless endangerment does not alter the district court's conclusion where the facts set forth in the PSR establish that Hyler shot at the Buick as it fled the parking lot. *See State v. Hatchett*, No. W2004-01073-CCA-R3-CD, 2005 WL 1707976, at *3 (Tenn. Crim. App. July 21, 2005) (evidence of shots fired at a fleeing victim is sufficient to negate a claim of self-defense); *State v. Davidson*, No. M2002-00178-CCA-R3-CD, 2003 WL 151202, at *10 (Tenn. Crim. App. Jan. 22, 2003) (same). Because Hyler agreed to the facts set forth in the PSR and produced no evidence to contradict those facts, the district court properly relied on the PSR in applying the Section

2K2.1(b)(6) enhancement.  *See Cook*, 453 F.3d at 777.

**C.      The district court did not violate Hyler's rights under *Apprendi***

In a pro se Supplemental Brief, Hyler claims that the district court imposed his sentence in violation of *Apprendi v. New Jersey* when it based its application of the Section 2K2.1(b)(6) enhancement "on [an] unrelated offense dating back to the year '2000.'" (Appellant's Supplemental Brief, In Pro Se ("App. Supp. Br.") 2); *see* 530 U.S. at 490.  Under *Apprendi*, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  530 U.S. at 490.

Hyler's arguments are without merit for two reasons.  First, there is no evidence that the district court based its application of the Section  2K2.1(b)(6) enhancement on anything other than the fact that Hyler shot at another person with a  firearm that he admitted to possessing illegally.  The district court only referred to Hyler's previous convictions in explaining the overall sentence imposed, stating:

> This Court has set this sentence in consideration of the serious offenses that you committed over the period of your life: The reckless endangerment in 2000, where a vehicle was let go in a busy neighborhood; the possession of a firearm in connection with possession of drugs; refusal to stop in a high speed pursuit in an area involving small children; aggravated robbery where the victim suffered serious bodily injury.

(Sentencing Hr'g Tr., JA 100.)  Second, "*Apprendi* does not apply to [Sentencing] Guidelines determinations, only statutory maximums. . . ." *See United States v. DeJohn*, 368 F.3d 533, 546 (6th Cir. 2004).  *Apprendi* cannot be violated where a defendant convicted under 18 U.S.C. § 922(g) is

sentenced to a term of imprisonment less than the 120-month statutory maximum. *Holmes v. United States*, 281 F. App'x 475, 481 (6th Cir. 2008) (citing *United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002) (*Apprendi* applies only where a district court's factfinding increases the penalty for a crime "beyond the prescribed statutory maximum") (quoting *Apprendi*, 530 U.S. at 490)).  In short, where the district court's factfinding was not in error and where Hyler was sentenced to a term below the 120-month statutory maximum, *Apprendi* is not implicated.

### III. CONCLUSION

For these reasons, the judgment of the district court is **AFFIRMED**.