NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0286n.06

Case No. 24-1731

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 09, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| KYLE LYNN CARSON, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

Before: COLE, READLER, and RITZ, Circuit Judges.

COLE, Circuit Judge. Kyle Carson pleaded guilty to conspiring to obstruct interstate commerce through robbery, in violation of 18 U.S.C. § 1951 ("Hobbs Act robbery"). Carson's co-conspirators used a firearm while committing the robbery, so the district court applied a six-level enhancement to Carson's sentence under U.S.S.G. § 2B3.1(b)(2)(B). Because the district court did not clearly err in imposing the enhancement, we affirm.

I.

The parties stipulated to the following facts. Kyle Carson and Andrew Williams jointly planned to rob a hydroponics store, Albion Hydroponics. To prepare, they visited the store on January 30, 2022, and "surveyed the premises." (Plea Agreement, R. 45, PageID 87.) Two weeks later, Williams and an unknown individual drove to the store in a stolen U-Haul van. They robbed the owner at gunpoint, restraining and injuring him, and stole hydroponics equipment and cash. Afterwards, the men drove to Carson's residence, where Carson took the equipment and attempted to hide the van.

The day after the robbery, police located Carson driving the stolen van, which contained zip-ties and other items from the robbery. Carson pleaded guilty to conspiring with Williams to commit Hobbs Act robbery. The Presentence Report (PSR) recommended applying the six-level firearm enhancement under U.S.S.G. § 2B3.1(b)(2)(B), to which Thomas objected.

During the sentencing hearing, the district court invited both sides to present evidence regarding the enhancement. The government called an agent from the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") who investigated the robbery. Having examined both Carson's and Williams's cell phone records, the agent testified that both cellphones were in the same location while traveling to and from Albion Hydroponics during the robbery, despite Carson residing approximately 20 miles from the city where the robbery took place.

The agent also testified that, while Carson could not be seen in interior surveillance footage from Albion Hydroponics, exterior surveillance footage showed a black sedan following the stolen U-Haul into the area, parking across the street during the robbery's commission, and following the U-Haul out of the area. Law enforcement did not identify the sedan's license plate, nor its owner. They also did not identify any vehicle that Carson owned or used during that time. Nonetheless, the government argued that this evidence was sufficient to show that Carson "was in very close proximity to the two men that did the robbery even if he didn't go in himself." (Sentencing Hr'g Tr., R. 110, PageID 447.) And, since Carson himself illegally owned a gun that was found during a search of his apartment soon after the robbery, "it wouldn't have been a surprise to him that somebody used a gun." (*Id.*) The government also contended that use of the gun was reasonably foreseeable because "[g]uns are commonly used during robberies." (*Id.*)

Carson opposed the enhancement. He argued that no evidence in the record showed that he knew that Williams or the unidentified man possessed a firearm or planned to use one. And,

even if Carson was near Albion Hydroponics during the robbery, that alone did not indicate a "conspiratorial arrangement that there was going to be a firearm used." (*Id.* at PageID 450.) Carson further argued that the government did not establish a connection between the gun found in his residence and the gun used in the robbery. Carson also rejected the government's contention that use of a firearm is always reasonably foreseeable to a robbery co-conspirator.

After hearing from both parties, the district court concluded that the government had proven, by a preponderance of the evidence, that Carson could reasonably foresee the use of the firearm. It applied the enhancement and calculated Carson's guideline range as 70 to 87 months. Varying downwards, the district court sentenced Carson to 60 months in prison. Carson timely appealed and challenges only the application of the firearm enhancement.

II.

"We review a district court's calculation of the advisory sentencing Guidelines as part of our obligation to determine whether the district court imposed a sentence that is procedurally unreasonable." *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009) (cleaned up) (quoting *United States v. Bullock*, 526 F.3d 312, 315 (6th Cir. 2008)). Procedural reasonableness requires the district court to "properly calculate the [G]uidelines range" and "select the sentence based on facts that are not clearly erroneous." *United States v. Morris*, 71 F.4th 475, 481 (6th Cir. 2023) (quotation omitted).

A defendant convicted of a robbery offense receives a six-level enhancement under U.S.S.G. § 2B3.1(b)(2)(B) when a firearm is used during the robbery. In the conspiracy context, a co-conspirator's use of a firearm is attributable to the defendant if such conduct was reasonably foreseeable. *See United States v. Barron*, 940 F.3d 903, 911–12 (6th Cir. 2019) (citations omitted); U.S.S.G. § 1B1.3(a)(1)(B)(iii). A district court's determination that a co-conspirator's use of a

firearm was reasonably foreseeable is a factual finding reviewed for clear error. *See Barron*, 940 F.3d. at 912. A factual finding is clearly erroneous when, after reviewing the evidence, we are left with the "definite and firm conviction that a mistake has been committed." *United States v. Young*, 847 F.3d 328, 342 (6th Cir. 2017) (citation omitted). So long as the "district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse, even if we would have weighed the evidence differently. *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).

It is undisputed that Williams and the unidentified man used a firearm during the robbery. Carson disputes only that he could reasonably foresee the use of the firearm. We first review the district court's reasoning and then address the parties' arguments. Upon review of the record, we are not left with a firm conviction that the district court erred in applying the enhancement. *See Barron*, 940 F.3d at 912.

### A.

At the sentencing hearing, the district court identified several facts to support its conclusion that use of the firearm was reasonably foreseeable to Carson. First, the Albion Hydroponics robbery involved a "fairly tight-knit conspiracy," and Carson was involved for its entire duration. (Sentencing Hr'g Tr., R. 110, PageID 455–56.) Second, police found Carson driving the stolen U-Haul containing items used in the robbery, including zip-ties, which suggested that Carson "knew certainly what the original plan was and what was executed after the fact." (*Id*. at PageID 456.) Third, the cell phone data and evidence of another car at the scene established by a preponderance of the evidence that Carson "was likely [] right across the street from the actual robbery during its commission[.]" (*Id.* at PageID 456–57.) Finally, Carson's unlawful possession of a firearm at his residence, even if it was not the firearm used in the robbery, made it "more

likely that it was reasonably foreseeable to him that a gun would be the method of force used." (*Id.* at PageID 458.)

While we are not persuaded that Carson's independent possession of a firearm alone would make his co-conspirators' use of a different firearm reasonably foreseeable, Carson's extensive involvement in the robbery does. We have previously determined—albeit in unpublished decisions—that a record supports finding that a co-conspirator's conduct was reasonably foreseeable to a defendant where the defendant was involved throughout the robbery conspiracy, including the planning process. *See, e.g.*, *United States v. Williamson*, 530 F. App'x 402, 405–06 (6th Cir. 2013) (determining that a co-conspirator's brandishing of a firearm was reasonably foreseeable where the defendant agreed to rob an establishment and participated throughout the robbery); *United States v. Coop*, No. 21-5292, 2023 WL 3017822, at *4 (6th Cir. Apr. 20, 2023) (affirming application of a firearm enhancement based, in part, on evidence of the defendant's "extensive planning" with his co-conspirator).

Here, Carson and Williams surveyed Albion Hydroponics before the robbery. And, taken together, the cell phone location data, exterior surveillance footage, and the agent's sworn testimony at sentencing make the district court's finding that Carson went to Albion Hydroponics and remained nearby during the robbery plausible, even if Carson did not enter the store. After the robbery, Carson took possession of the U-Haul, which contained items used during the robbery's commission, including items used to restrain the storeowner. Carson's involvement in every stage of the robbery supports the district court's conclusion that he knew the key details of the plan, including, more likely than not, the use of a firearm to threaten and control the store owner.

B.

Carson argues that the district court erroneously applied the § 2B3.1(b)(2)(B) enhancement as a "strict-liability enhancement" because the record did not "establish foreseeability." (Appellant Br. 23, 31.) But the district court correctly explained the reasonable foreseeability standard and articulated the facts supporting its conclusion. Carson's disagreement with how the district court weighed the evidence does not support his position that the district court applied or endorsed a strict liability approach.

Carson further contends that the district court improperly factored the nature of the offense into its analysis when it observed that Hobbs Act robberies require the actual or threatened use of force and that firearms are a commonly used method of force.[1] The district court, however, did not rely solely or primarily upon that observation when reaching its conclusion. Although it noted that firearms are a common method of exercising force in robberies, it also invited both sides to present evidence regarding the enhancement, evaluated the record, and made particularized findings on Carson's extensive involvement in the conspiracy that supported finding that the use of the firearm was reasonably foreseeable to him. We do not find that the district court clearly erred in its analysis.

Given the district court's multi-factored analysis, we also do not reach the government's alternative argument that, notwithstanding the district court's other findings, the nature of Hobbs Act robberies alone creates a presumption that use of a firearm would be foreseeable.

III.

For the foregoing reasons, we affirm.

---

[1] Carson relies extensively on out-of-circuit cases. Since we are not bound by those cases, nor persuaded that they are closely analogous to this case's facts, we do not discuss them here.