*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0152p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*

                                                    No. 09-1961

MARIOUS DELANO TAYLOR,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 6-00295-001—Robert Holmes Bell, District Judge.

Argued:  March 2, 2011

Decided and Filed:  June 7, 2011

Before:  MOORE, COLE, and ROGERS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Clare E. Freeman, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Clare E. Freeman, Richard D. Stroba, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant.  Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.   Defendant-Appellant Marious Delano Taylor pleaded guilty to one count of violating the federal felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(1).  The district court sentenced him to 120 months of imprisonment, but the government appealed and we vacated the sentence and

1

remanded the case to the district court for resentencing in accordance with the Armed Career Criminal Act ("ACCA"). After a Michigan state court amended the judgment of one of Taylor's predicate convictions for the ACCA enhancement, the district court resentenced Taylor to the same 120-month term of imprisonment. Taylor now appeals the sentence, raising both procedural and substantive challenges. Because the district court at resentencing was without the guidance of the Supreme Court's recent decision in *Pepper v. United States*, --- U.S. ---, 131 S. Ct. 1229 (2011), we **VACATE** the sentence and **REMAND** the case to the district court for de novo resentencing consistent with this opinion.

## I.  BACKGROUND & PROCEDURE

On December 5, 2006, Taylor was indicted on one count of violating the federal felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(1). After the district court denied Taylor's motion to suppress evidence seized at his home pursuant to a search warrant, Taylor entered a plea of guilty. Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR") applying the May 1, 2007 edition of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Manual. The PSR concluded that Taylor had been convicted of two prior violent felonies and one serious drug offense and therefore qualified as an armed career criminal under the ACCA, 18 U.S.C. § 924(e). As an armed career criminal, Taylor faced a statutorily mandated minimum sentence of 15 years of imprisonment, and the PSR recommended a Guidelines range of 188 to 235 months based on a total offense level of 31 and a criminal history category of VI. The PSR also calculated Taylor's Guidelines range if the ACCA did not apply, which was 110 to 120 months based on a total offense level of 25 and a criminal history category of VI.

Taylor challenged the PSR's conclusion that he qualified as an armed career criminal. At the sentencing hearing held on June 28, 2007, the district court ruled that the ACCA did not apply to Taylor because it concluded that his 2002 Michigan conviction for attempted delivery of under 50 grams of cocaine did not qualify as a "serious drug offense." *See* 18 U.S.C. § 924(e)(2)(A) (defining "serious drug offense").

The district court sentenced Taylor to 120 months of imprisonment—the statutory maximum under § 924(a)(2).

Taylor appealed the district court's denial of his motion to suppress, and the government cross-appealed the district court's determination that the ACCA did not apply to enhance Taylor's sentence. We affirmed the district court's denial of Taylor's motion to suppress but reversed the district court's decision not to apply the ACCA. *United States v. Taylor*, 301 F. App'x 508 (6th Cir. 2008) (unpublished decision), *cert. denied*, 129 S. Ct. 2886 (2009). We concluded that Taylor's 2002 Michigan "conviction for an offense involving distributing a controlled substance, enhanced by [a] prior conviction to a maximum term of incarceration of ten years, satisfies the definition of 'serious drug offense' under the ACCA." *Id.* at 520. Therefore, we vacated the sentence and remanded "for re-sentencing in accordance with the ACCA." *Id.* at 522.

When the parties appeared before the district court for resentencing on June 4, 2009, defense counsel requested to delay resentencing because Taylor had asked the Michigan circuit court to amend the judgment of his 2002 attempted-delivery conviction. Under Michigan law, the maximum penalty for Taylor's attempt conviction was five years of imprisonment. *Id.* at 519 (citing MICH. COMP. LAWS §§ 333.7401(2)(a)(iv), 750.92). Taylor, however, had a prior conviction that triggered an enhanced penalty provision of ten years. *Id.* (citing MICH. COMP. LAWS § 333.7413(2)). Defense counsel told the district court that Taylor was challenging the application of the sentencing enhancement, and, if successful, his 2002 attempted-delivery conviction would not meet the ten-year-maximum-term-of-imprisonment requirement in the "serious drug offense" definition. The government opposed adjournment to wait for the state court's resolution of Taylor's request, but the district court reset the hearing.

On June 24, 2009, the Michigan circuit court granted Taylor's request, concluding that the sentence enhancement was improper. That court entered an Amended Judgment, which stated that the maximum sentence for Taylor's conviction was five years. Because the 2002 conviction no longer had a maximum term of imprisonment of ten years, Taylor submitted to the district court that he was not subject

to the ACCA on resentencing. At a hearing on July 21, 2009, the district court adopted the Guidelines calculation from a Resentencing Report prepared by the U.S. Probation Office using the May 1, 2007 version of the Guidelines. The calculation resulted in an offense level of 25 and criminal history category VI, yielding a Guidelines range of 110 to 120 months. The district court again sentenced Taylor to the statutory-maximum sentence of 120 months of imprisonment, to run concurrent with a state sentence. Taylor timely appealed and now challenges the procedural and substantive reasonableness of his sentence.

## II.  ANALYSIS

### A.  Procedural Reasonableness

We review sentences for procedural reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Procedural unreasonableness includes when a sentencing court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

Taylor raises four arguments with respect to the procedural reasonableness of his sentence. He argues that the district court erred in (1) not considering amendments to the Guidelines adopted by the Sentencing Commission subsequent to his original sentencing, (2) relying on the Guidelines' cross-reference to the crack-cocaine guidelines, (3) stating that it was "varying" from the ACCA, and (4) applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for use or possession of a firearm in connection with another felony.

### 1. Postsentencing Amendments to the Guidelines

Taylor first argues that the district court erred by not considering amendments to the Guidelines adopted by the Sentencing Commission since his original sentencing, which—in his calculation—would have lowered his Guidelines range to 84 to 105 months (if the district court applied the drug guideline in § 2D1.1 based on the cross-reference in § 2K2.1(c)(1)(A)) or 70 to 87 months (if it did not).[1] *See* R.74 (Resent. Mem. Supp. at 4–7) (explaining calculations).  Taylor argues that, under *United States v. Booker*, 543 U.S. 220 (2005), the resentencing statute, 18 U.S.C. § 3742(g), which mandates that the district court apply the Guidelines in effect at the time of the original sentencing and limits when the district court can sentence outside the Guidelines range, "cannot bind a sentencing court to consider only the original guideline range or to impose a sentence within that range."  Appellant Br. at 14.

In *Pepper v. United States*, --- U.S. ---, 131 S. Ct. 1229 (2011), decided on the same day that we held oral argument in this case, the Supreme Court expressly invalidated § 3742(g)(2), the subsection that prohibits the district court from resentencing a defendant outside the applicable Guidelines range except in two narrow circumstances. *Id.* at 1243–44.  The Court concluded that, as with the sentencing provisions in 18 U.S.C. §§ 3553(b)(1) and 3742(e) that it invalidated in *Booker*, § 3742(g)(2) raises Sixth Amendment problems because it "requires district courts effectively to treat the Guidelines as mandatory in an entire set of cases." *Id.* at 1244. In a letter to this court pursuant to Federal Rule of Appellate Procedure 28(j), Taylor argues that § 3742(g)(1), which mandates that the district court apply the Guidelines "that were in effect on the date of the previous sentencing of the defendant prior to the appeal," should likewise be invalidated.

---

[1]When a firearm is "used or possessed . . . in connection with the commission . . . of another offense," U.S.S.G. § 2K2.1(c)(1)(A) instructs the district court to apply the offense level from the guidelines for the other offense if it is greater than the offense level from the firearms guideline in § 2K2.1. The cross-reference provision in § 2K2.1(c)(1)(A) applies to Taylor because he used or possessed a firearm in connection with the delivery of cocaine base. *See infra* Part II.A.4.  To determine the cross-referenced guidelines, § 2K2.1(c)(1)(A) refers the district court to the provision for attempts, solicitations, or conspiracies in § 2X1.1, which, in turn, refers the district court to the guideline for the substantive offense. Here, the relevant guideline for the substantive offense is the drug guideline § 2D1.1.

**a. Validity of § 3742(g)(1) after *Pepper***

We first consider Taylor's argument that § 3742(g)(1) also should be invalidated as § 3742(g)(2) was in *Pepper*. In *United States v. Williams*, 411 F.3d 675, 677–78 (6th Cir. 2005), we addressed *Booker*'s impact on § 3742(g) and concluded that a district court at resentencing must apply the version of the Guidelines in effect at the defendant's original sentencing but that the resulting Guidelines range is, as *Booker* requires, only advisory. Contrary to Taylor's suggestion, we do not read *Pepper* to undermine the validity of *Williams* or § 3742(g)(1)'s direction regarding which Guidelines version to use to determine the applicable range for purposes of § 3553(a)(4)(A). Rather, *Pepper* addressed the district court's ability to impose a sentence outside the applicable Guidelines range at resentencing. *Pepper*, 131 S. Ct. at 1239. The issue of which Guidelines version to use at resentencing to calculate the applicable Guidelines range, addressed in § 3742(g)(1), is distinct from the issue of the district court's discretion at resentencing to vary from the applicable range when determining an appropriate sentence, addressed in § 3742(g)(2). A Sixth Amendment problem arises in the latter instance when the applicable Guidelines are treated as mandatory. *See Pepper*, 131 S. Ct. at 1243–46 (citing *Booker*, 543 U.S. 220). As with § 3553(a)(4)(A), however, the district court's calculation of the applicable Guidelines range using the version mandated by § 3742(g)(1) does not implicate the Sixth Amendment. *See Booker*, 543 U.S. at 259–60 (invalidating § 3553(b)(1), which restricted the district court's ability to sentence outside the applicable Guidelines range, but upholding as constitutional § 3553(a)(4)(A), which requires the district court to consider the applicable Guidelines range).

Closely related, the fact that both § 3742(g)(1) and (g)(2) were enacted as part of the PROTECT Act of 2003 does not require that we invalidate subsection (g)(1) as Taylor suggests. Although the PROTECT Act's broad purpose "to make Guidelines sentencing even more mandatory" runs afoul of the Sixth Amendment, *Pepper*, 131 S. Ct. at 1246 n.13 (internal quotation marks omitted), "we must retain those portions of the Act that are (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute." *Booker*, 543 U.S.

at 258–59, 265 (internal quotation marks and citations omitted) (noting that Congress's intent in enacting the Sentencing Reform Act was "to create a form of mandatory Guidelines system" but severing only those portions "inconsistent with the Court's constitutional requirement"). We think that § 3742(g)(1)—the resentencing counterpart to § 3553(a)(4)(A), which the Court upheld in *Booker*, 543 U.S. at 258–65—meets these criteria and must be preserved.

Moreover, we believe that the facial tension between § 3742(g)(1)'s instruction and the Guidelines' instruction in § 1B1.11(a) to "use the Guidelines Manual in effect on the date that the defendant is sentenced" does not withstand closer review. In its background commentary to § 1B1.11, the Sentencing Commission indicates that its instruction is based, not on its own independent policy view that the proper Guidelines to apply are those in effect at the time of sentencing, but rather on Congress's mandate in § 3553. Congress, however, explicitly included an exception in § 3553(a)(4)(A)(ii) for § 3742(g): the former instructs that the court should apply the Guidelines "that, *except as provided in section 3742(g)*, are in effect on the date the defendant is sentenced." § 3553(a)(4)(A)(ii) (emphasis added). Thus, to the extent that § 1B1.11(a) is in tension with § 3742(g)(1), it is because the Sentencing Commission, in attempting to implement Congress's mandate in § 3553(a)(4)(A), failed to incorporate Congress's express exception for § 3742(g). We read §§ 3553(a)(4)(A) and 3742(g)(1) together to express Congress's intent that the district court at resentencing apply the Guidelines that were in effect at the time of the defendant's original sentencing.[2]

___

[2]We acknowledge that the plain language of § 3742(g)(1), which instructs the district court to use the Guidelines "that were in effect on the date of the *previous* sentencing of the defendant prior to the appeal," is problematic when a case is remanded multiple times for resentencing. § 3742(g)(1) (emphasis added). One district court has recognized that, "as written, the drafters contemplated only one resentencing, and did not envision the ratcheting-up to more recent versions of the guidelines which occurs in cases where there are multiple remands for resentencing . . . if the language is applied literally." *United States v. Angle*, No. 2:98 CR 37, 2008 WL 1882860, at *12 (N.D. Ind. Apr. 24, 2008). We agree with that court that "§ 3742(g)(1) only makes sense if 'date of the previous sentencing of the defendant prior to the appeal' is read to mean 'date of the *original* sentencing of the defendant prior to the appeal.'" *Id.* Indeed, this court and others consistently have read § 3742(g)(1) to mean the defendant's "original" or "first" sentencing, although the interpretive issue noted above has not been expressly recognized in these cases. *See, e.g.*, *United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) (review of first resentencing); *United States v. Mondragon-Santiago*, 564 F.3d 357, 369 n.11 (5th Cir.) (review of original sentencing), *cert. denied*, 130 S. Ct. 192 (2009); *United States v. Tanner*, 544 F.3d 793, 797 (7th Cir. 2008) (review of original sentencing); *United States v. Andrews*, 447 F.3d 806, 812 n.2 (10th Cir. 2006) (review of first resentencing); *United States v. Bordon*, 421 F.3d 1202, 1206–07 (11th Cir. 2005) (review of second resentencing).

For these reasons, we continue to adhere to "the rule in this circuit . . . that upon remand for resentencing, the court should apply the version of the guidelines that properly governed the original sentencing." *United States v. Rorrer*, 161 F. App'x 518, 521 (6th Cir. 2005) (unpublished decision); *accord United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) (citing § 3742(g)(1) and concluding that the district court "properly applied the Guidelines in effect at the time of the original sentencing"). Accordingly, the district court properly applied the May 1, 2007 Guidelines in effect at the time of Taylor's original sentencing.

### b. Postsentencing Amendments to the Guidelines Under § 3553(a)

Although we do not read *Pepper* to impact the district court's determination of which version of the Guidelines to apply at resentencing, we do think that the Court's analysis of postsentencing rehabilitation is relevant to the question of whether the district court can consider, in its discretion under § 3553(a), postsentencing amendments to the Guidelines. We have previously suggested that the district court can consider subsequent amendments to the Guidelines to select an appropriate sentence. *See United States v. Atkinson*, 354 F. App'x 250, 253 (6th Cir. 2009) (unpublished decision) ("While it appears that [the relevant] amendment will be found not to have retroactive application, adoption of this change is something that the district court could have considered in its discretion."). We now make explicit what we suggested in *Atkinson* and join a number of our sister circuits[3] in holding that the district court can consider subsequent amendments to the Guidelines for purposes of fashioning an appropriate sentence under the § 3553(a) factors.

---

[3]*See United States v. Rodriguez*, 630 F.3d 39, 42 (1st Cir. 2010) ("Exercising their *Booker* discretion, judges mulling over the multiple criteria in § 3553(a) can turn to post-offense Guidelines revisions to help select reasonable sentences . . . ."); *United States v. Gilmore*, 599 F.3d 160, 166 (2d Cir. 2010) (approving of district court's consideration of Guidelines amendments at resentencing for the purpose of assessing the seriousness of the offense and reasonableness of the sentence); *United States v. Angle*, 598 F.3d 352, 360 (7th Cir. 2010) ("[E]ven though § 3742(g) precluded the district court from *applying* the 2006 guidelines, the statute did not bar the court from *consulting* the Sentencing Commission's current views as a guide to its exercise of *Booker* discretion."); *United States v. Godin*, 522 F.3d 133, 136 (1st Cir. 2008) ("[The relevant amendment] does not alter the guideline range applicable in this case; but in dealing with a sentence that has not become final, it might alter the district court's ultimate choice of a *discretionary* sentence in the post-*Booker* era.").

The government does not disagree that the district court can consider postsentencing amendments; rather, it argues that remand is not necessary in this case because the district court was asked to consider the amendments but declined. At the resentencing hearing, the district court explained its rationale for rejecting Taylor's argument. It stated that, to be consistent, if the court considers the newer Guidelines that the defendant prefers, it must also consider the newer Guidelines that the government desires, which could be harsher. The district court reasoned that "the Guideline Commission has struck a good balance between the advocacy that can fall against both parties" by instructing that the court "take the scoring that was in existence at the time." R.81 (Resent. Hr'g Tr. at 5–6). The district court, thus, categorically declined to consider postsentencing amendments so that "no advantage is gained by either party." *Id.* at 6.

The district court's reasoning, however, is contrary to the Supreme Court's analysis of plenary resentencings in *Pepper* and Congress's directives in §§ 3661 and 3553(a). As explained below, the Commission in fact has not made a policy decision that it would be unfair for a party to benefit from the postsentencing amendments to the Guidelines when the district court is assessing what is an appropriate sentence. Rather, the Court's analysis in *Pepper* rejects as contrary to congressional directive the policy view that resentencings should be conducted as if static in time with the original sentencing. In other words, the district court must consider arguments regarding how postsentencing information is relevant to the determination of an appropriate sentence, regardless of whether such information may benefit the defendant in some cases and the government in others. *See Pepper*, 131 S. Ct. at 1249. Thus, it is an abuse of discretion for the district court to rely on this purported policy of fairness to decline to consider the merits of Taylor's arguments that the amendments inform the § 3553(a) factors in his case.[4]

---

[4]To the extent that our decision rests on the substance of the district court's reasoning, it may be more appropriately viewed as a substantive-reasonableness determination. *Cf. United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (noting the overlap in "the procedural and substantive components of our reasonableness inquiry").

As in *Pepper*, we start with "the 'longstanding principle that sentencing courts have broad discretion to consider various kinds of information.'" 131 S. Ct. at 1240 (quoting *United States v. Watts*, 519 U.S. 148, 151 (1997)). This principle has been codified by Congress, 18 U.S.C. § 3661,[5] and incorporated into the Guidelines by the Sentencing Commission, U.S.S.G. § 1B1.4.[6] "Both Congress and the Sentencing Commission thus expressly preserved the traditional discretion of sentencing courts to 'conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.'" *Pepper*, 131 S. Ct. at 1240 (alteration in original) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)).

We next consider Congress's expressed intent in §§ 3661 and 3553(a). We recognize that evidence of a defendant's postsentencing conduct, at issue in *Pepper*, is particular to the individual defendant, whereas information regarding postsentencing amendments to the Guidelines is more broadly applicable to many defendants. Nevertheless, § 3661 does not distinguish between sentencing information particular to the individual and information applicable to a larger number of defendants. *See Pepper*, 131 S. Ct. at 1241–42; U.S.S.G. § 1B1.4 cmt. background ("Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence . . . ."). As the Supreme Court in *Pepper* stated, "We have recognized that the broad language of [18 U.S.C.] § 3661 does not provide any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing. A categorical bar on the consideration of postsentencing . . . evidence would directly contravene Congress' expressed intent in § 3661." 131 S. Ct. at 1241–42 (internal citation and quotation marks omitted).

---

[5]"*No limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (emphasis added).

[6]"In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4 (2010) (emphasis added).

Additionally, amendments to the Guidelines are relevant to the § 3553(a) factors that the court must consider at resentencing pursuant to § 3742(g). In particular, the Sentencing Commission's view of the defendant's offense conduct, revealed in the Commission's actions to revise the Guidelines, is highly relevant to the district court's assessment of "the nature and circumstances of the offense," § 3553(a)(1), and "the seriousness of the offense," § 3553(a)(2)(A). *See United States v. Gilmore*, 599 F.3d 160, 166 (2d Cir. 2010) (explaining how the district court, in imposing an above-Guidelines sentence, used the fact that a subsequent amendment provided for a more severe sentence than under the applicable Guidelines range as evidence "that the defendant's offense was extraordinarily serious" under § 3553(a)(2)(A)). The amendments may also inform the district court's assessment of what sentence is needed "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," § 3553(a)(2)(C). *See also United States v. Rodriguez*, 630 F.3d 39, 42 (1st Cir. 2010) (noting the value for purposes of assessing the seriousness of the crime and the level of deterrence).

The relevance of the Sentencing Commission's views to the district court's assessment of the § 3553(a) factors is inherent in its role, set by Congress, "to write Guidelines that will carry out [the] § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). The amendments, therefore, "bear[] directly on the District Court's overarching duty 'to impose a sentence sufficient, but not greater than necessary' to serve the purposes of sentencing." *Pepper*, 131 S. Ct. at 1243 (quoting § 3553(a)). The Commission is tasked with continuously reviewing its policies and the Guidelines in light of the evolutionary nature of sentencing: "sentencing is a dynamic field that requires continuing review by an expert body to revise sentencing policies, in light of application experience, as new criminal statutes are enacted, and as more is learned about what motivates and controls criminal behavior." U.S.S.G. Ch. 1 Pt. A(2). Categorically refusing to consider the Commission's evolving wisdom as to what is a proper sentence to meet the objectives of § 3553(a) is, therefore, antithetical to the Commission's purpose.

Moreover, there is "no general congressional policy reflected in § 3742(g)(2) to preclude resentencing courts from considering postsentencing information." *Pepper*, 131 S. Ct. at 1246. As the *Pepper* Court explained,

> [T]he legislative history of § 3742(g)(2) confirms that the provision, enacted as part of the PROTECT Act of 2003, § 401(e), 117 Stat. 671, was not aimed at prohibiting district courts from considering postsentencing developments. Rather, it was meant to ensure that under the then-mandatory Guidelines system, when a particular departure was reversed on appeal, the district court could not impose the same sentence on remand on the basis of a different departure.

*Id.* at 1246 n.13 (citing H.R. Conf. Rep. No. 108-66, at 58–59 (2003) (Conf. Rep.)). Congress's purpose for § 3742(g)(2)—"to make Guidelines sentencing even more mandatory than it had been"—"has ceased to be relevant" after *Booker*. *Id.* (internal quotation marks omitted). Nor does § 3742(g)(1) reflect a congressional policy to preclude consideration of postsentencing amendments to the Guidelines at resentencing. As explained above, determining which version of the Guidelines to apply at resentencing, addressed in subsection (g)(1), is a distinct inquiry from determining an appropriate sentence, addressed in subsection (g)(2). We do not read Congress's intent in subsection (g)(1)—that the applicable Guidelines be those in effect at the time of the original sentencing—to be so broad as to foreclose or discourage the district court from considering postsentencing amendments to the Guidelines when determining an appropriate sentence.

*Pepper* instructs that the district court is required "to sentence the defendant as he stands before the court on the day of sentencing." *Id.* at 1242 (internal quotation marks omitted). Similar to our analysis of § 3661, we have no basis under § 3553(a) to distinguish postsentencing information particular to a defendant, as in *Pepper*, and postsentencing information more broadly applicable, as in amendments to the Guidelines. With respect to §§ 3553(a)(4) and (5), we reiterate that the question of the applicable Guidelines and accompanying policy statements—to which the "district court must still give 'respectful consideration,'" *id.* at 1247 (citing *Kimbrough v. United States*, 552 U.S. 85, 101 (2007))—is different than the question of whether the district

court can consider particular postsentencing information in selecting an appropriate sentence. Although the district court must consider the applicable Guidelines and accompanying policy statements, the "district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views," embodied in the applicable Guidelines. *Id.* We think that when the applicable Guidelines or accompanying policy statements subsequently have been amended, it may be particularly appropriate for the district court to disagree with the earlier version, given that the amendment demonstrates that the Commission itself no longer agrees with its own previous views.

Section 3553(a)(6)'s instruction to avoid unwarranted sentencing disparities is equally unavailing despite the fact that "allowing district courts to consider [postsentencing amendments to the Guidelines] may result in disparate treatment between those defendants who are sentenced properly and those who must be resentenced." *Id.* at 1248. The *Pepper* Court rejected the "suggest[ion] that Congress enacted § 3553(a)(6) out of a concern with disparities resulting from the normal trial and sentencing process." *Id.* For these reasons and in accordance with *Pepper*, the district court's categorical decision not to consider the amendments to the Guidelines based on its view that neither party should be advantaged "conflicts with longstanding principles of federal sentencing law and contravenes Congress' directives in §§ 3661 and 3553(a)." *Id.* at 1243.

Taylor raises the issue of possible ex post facto concerns with respect to the district court's consideration of amendments that render the Guidelines more severe. Appellant Br. at 14 (citing *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)). Other circuits addressing the issue have distinguished the ex post facto concerns raised by the district court's use of amendments in the calculation of the applicable Guidelines range and those raised by the district court's consideration of amendments in its § 3553(a) evaluation. *See Rodriguez*, 630 F.3d at 42; *Gilmore*, 599 F.3d at 166. The former question remains unresolved in this circuit, *United States v. Jones*, 370 F. App'x 577, 580 (6th Cir.) (unpublished decision), *cert. denied*, 130 S. Ct. 3377 (2010); *United States*

*v. Duane*, 533 F.3d 441, 445–447 (6th Cir. 2008), and we need not decide the latter question today because the amendments that Taylor has asked the district court to consider would *lower* his Guidelines range.  Even if we assume, *arguendo*, that ex post facto consequences limit in some instances the district court's consideration under § 3553(a) of amendments that render the Guidelines more severe, an ex post facto limitation does not undermine our conclusion that §§ 3661 and 3553(a) require consideration of the amendments as relevant postsentencing information, when properly raised.

The district court based its decision on a purported policy decision that the Commission in fact has not made.  Moreover, even if the district court held this policy view independent of what it thought the Commission or statute advises, a policy that neither party should be advantaged by intervening information is contrary to Congress's directives in §§ 3661 and 3553(a) and the Supreme Court's decision in *Pepper*.  To be sure, the district court has discretion to decide whether it agrees with the Commission's 2007 view or its 2009 view of what is an appropriate sentence in Taylor's case, and we agree that general consistency with respect to *this* discretionary decision—deciding the merits of the argument in relation to an appropriate sentence—is good.  The district court does not have the discretion, however, to decline to consider Taylor's arguments; a district court's decision not to consider the merits of a statutorily relevant sentencing argument is an abuse of its discretion, even if the district court exercises its discretion "fairly" in that it decides not to do so categorically with respect to both defendants and the government.  We limit the district court's discretion no more than to require the district court to consider the defendant's arguments and statutorily relevant sentencing information in making an individualized determination of an appropriate sentence.  *See, e.g.*, *United States v. Gunter*, 620 F.3d 642, 645–46 (6th Cir. 2010); *United States v. Ward*, 356 F. App'x 806, 810–11 (6th Cir. 2009); *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009).

We vacate Taylor's sentence and remand for resentencing.  On remand, the district court should consider the merits of Taylor's arguments regarding how

postsentencing amendments to the Guidelines relate to the determination of an appropriate sentence under § 3553(a). We emphasize that the district court is *not required* to agree with the Commission's evolving views embodied in the subsequent Guidelines amendments. *See United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). But the district court cannot rely on a policy of permitting no advantage to either party that is contrary to *Pepper* to categorically deny consideration of a relevant sentencing factor, *see United States v. Johnson*, No. 09-2173, 2010 WL 5395725, at * 3 (6th Cir. Dec. 28, 2010) (unpublished decision), and we have no way of determining on the record before us whether the district court would have imposed the same sentence had it been aware of the Supreme Court's decision in *Pepper*.[7]

### 2. Reliance on the Cocaine-Base Sentencing Guideline

Taylor next argues that the district court erred in relying on the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A) to the cocaine-base guideline in U.S.S.G. § 2D1.1. The government argues that Taylor's claim is subject to plain-error review because he never objected in the district court to the cross-reference. In his supplemental resentencing memorandum, however, Taylor noted that the calculations that he was providing were based on the cross-reference to the cocaine-base guideline and "urge[d] the Court to[] vary substantially from the[] advisory" cocaine-base guideline. R.74 (Resent. Mem. Supp. at 5 & n.2, 6–7 & n.3); *id.* Att. 1 (Dep't of Justice Statement). At the resentencing hearing, defense counsel referred the district court to the two resentencing memoranda filed and specifically asked the district court to consider the lower Guidelines score that he calculated, which included his objections to the disparity in the Guidelines for cocaine versus cocaine-base offenses. R.81 (Resent. Hr'g Tr. at 10–12). Therefore, the record shows that Taylor did object to the cross-reference. Nevertheless, we need not address this claim independently. Because the cocaine-base disparity is intertwined with Taylor's argument regarding the Guidelines amendments, on remand the district court

---

[7]Indeed, the district court found Taylor's argument regarding the amendments "appealing" and "compelling," R.81 (Resent. Hr'g Tr. at 5–6).

should consider Taylor's cocaine-base cross-reference argument, along with the other amendments that Taylor asks the court to consider.

### 3. "Variance" from the ACCA

Taylor also argues that the district court erred in stating that it was "varying" from the ACCA when it was actually sentencing Taylor to the applicable statutory-maximum sentence. Taylor argues that the district court's statements suggesting that it gave Taylor a break are inconsistent with the district court's sentence imposing the statutory-maximum sentence of imprisonment. The government argues that the record reveals that "[t]he district court clearly knew that the defendant was no longer subject to the ACCA when it resentenced the defendant,"[8] Appellee Br. at 24, and that the district court was simply telling Taylor that he received a break at his original sentencing. In light of our decision to vacate the sentence and remand for resentencing, however, we need not review the district court's explanation now. At resentencing, the district court should explain clearly its rationale for imposing the particular sentence.

### 4. Application of U.S.S.G. § 2K2.1(b)(6)

Finally, Taylor argues that the district court erred in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for use or possession of a firearm in connection with another felony, specifically delivery of cocaine base.[9] Specifically, Taylor challenges the district court's determination that the government proved by a preponderance of the evidence a nexus between his use or possession of a firearm and the felony delivery of cocaine base. Although we vacate Taylor's sentence on the issue of the postsentencing amendments, we address this Guidelines-calculation issue in the interest of judicial economy.

---

[8]The government does not challenge the district court's sentence or apparent determination that Taylor does not qualify for the ACCA. *See United States v. Campbell*, 168 F.3d 263, 269 (6th Cir. 1999) (stating that new or different evidence available on remand is an exception to the law-of-the-case doctrine).

[9]The enhancement in U.S.S.G. § 2K2.1(b)(6) was located in subsection (b)(5) until November 1, 2006. *See* U.S.S.G. Supp. to App. C, amend. 691.

### a. Standard of Review

We start with two issues relating to our standard of review.  The government argues that Taylor waived his challenge to the enhancement by not raising it in the original district court or appellate proceedings.  The government, however, "waived its 'waiver' argument" by not asserting it at the district court in the resentencing proceedings when Taylor raised the issue.  *See Gibbs*, 626 F.3d at 351.  Next, there is some confusion in our case law regarding the proper standard for reviewing the district court's determination of whether the § 2K2.1(b)(6) enhancement applies in a particular factual situation.  *See United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010) (noting that the standard "is subject to debate").  In our review of a district court's calculation of the applicable Guidelines, we generally "review[] the district court's factual findings for clear error and its legal conclusions de novo."  *Id.*  However, we also have said that we "accord 'due deference' to the district court's determination that the U.S.S.G. [§ 2K2.1(b)(6)] enhancement applies."  *United States v. Burke*, 345 F.3d 416, 426–27 (6th Cir. 2003), *cert. denied*, 541 U.S. 966 (2004); *accord United States v. Heighton*, 272 F. App'x 469, 472 (6th Cir. 2008) (unpublished decision).  When the specific issue on appeal is whether the government has established a nexus between the firearm and an independent felony, we have applied the de novo, clear error, and due deference standards of review.  *Compare, e.g.*, *United States v. McKenzie*, No. 09-5068, 2011 WL 477738, at *2 (6th Cir. Feb. 10, 2011) (unpublished decision) (de novo), *and United States v. Bullock*, 526 F.3d 312, 315–16 (6th Cir. 2008) (de novo), *with United States v. Rogers*, 594 F.3d 517, 522 (6th Cir. 2010) (clear error), *and United States v. Richardson*, 510 F.3d 622, 628 (6th Cir. 2007) (clear error), *cert. denied*, 533 U.S. 1013 (2008), *with United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001) (due deference).

In *United States v. Hardin*, 248 F.3d 489 (6th Cir.), *cert. denied*, 534 U.S. 920 (2001), we set forth the circuit's general rule that we review factual findings for clear error and legal questions, including whether to apply the § 2K2.1(b)(6) enhancement, de novo.  *Id.* at 492–93 (quoting *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir.),

*cert. denied*, 519 U.S. 858 (1996)). But we also questioned, without deciding, the impact of the Supreme Court's decision in *Buford v. United States*, 532 U.S. 59, 66 (2001), which set forth a deferential standard of review for the fact-bound legal question of whether a defendant's prior convictions were "related" for purposes of sentencing. *Hardin*, 248 F.3d at 493–95. In *Ennenga*, 263 F.3d at 502, we answered the question left open in *Hardin*, concluding that the "due deference" standard from *Buford* should be afforded to the district court's determination that the § 2K2.1 enhancement applies in a particular fact situation.

We recognize that challenges to the application of the § 2K2.1(b)(6) enhancement may "present[] strictly a question of law," which warrants de novo review. *United States v. Hyler*, 308 F. App'x 962, 964–67 (6th Cir. 2009) (unpublished decision) (citing *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002)) (reviewing de novo three questions of law regarding application of the enhancement); *see also United States v. King*, 341 F.3d 503, 505–06 & n.3 (6th Cir. 2003) (reviewing de novo whether felonious assault constitutes "another felony" under § 2K2.1). We need not consider here, however, the boundary between pure questions of law and fact-bound questions of law with respect to the application of § 2K2.1(b)(6). Taylor challenges the district court's determination that the firearm was used or possessed "in connection with" the delivery-of-cocaine-base felony—i.e., that there was a nexus between the firearm and the felony—which is a "fact-specific inquiry." *McKenzie*, 2011 WL 477738, at *3. Under *Ennenga*, the district court's determination of the fact-bound question whether a defendant's use or possession of a firearm was "in connection with" another felony is afforded due deference. 263 F.3d at 503 (applying deferential standard to the district court's application of the enhancement under the "fortress theory" to the undisputed facts of the case). Therefore, we review the district court's factual findings for clear error, and accord "due deference" to the district court's determination that the firearm was used or possessed "in connection with" the other felony, thus warranting the application of the U.S.S.G. § 2K2.1(b)(6) enhancement.

### b.  Analysis of the § 2K2.1(b)(6) Enhancement

The Guidelines provide for a four-point enhancement to the defendant's base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6) (May 1, 2007).  The application notes indicate that the enhancement should apply "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively."  *Id.* cmt. n.14(A).  Specifically with respect to a drug trafficking offense, the enhancement should apply if the firearm "is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."  *Id.* cmt. n.14(B).  "A district court should apply the enhancement only if the government establishes, by a preponderance of the evidence, a nexus between the firearm and an independent felony."  *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) (internal quotation marks and alteration omitted).  "[P]ossession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1."  *Ennenga*, 263 F.3d at 503.  Additionally, "the presence of drugs in a home under a firearm conviction does not *ipso facto* support application of a [§ 2K2.1(b)(6)] enhancement."  *Hardin*, 248 F.3d at 501.  Rather, the district judge must examine the particular facts of each case to determine whether the enhancement applies.  *Id.*

In Taylor's case, the government relies on the "fortress theory," under which "a sufficient connection is established if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction."  *Angel*, 576 F.3d at 321 (internal quotation marks omitted).  "Put differently, § 2K2.1 applies if the firearm had some emboldening role in a defendant's felonious conduct."  *Id.* (alteration and internal quotation marks omitted).  The PSR indicates that officers found a loaded "Davis Industries .32 caliber pistol, 11.7 grams of cocaine base, a digital scale, packaging paraphernalia, $400.00 in U.S. currency, and residency paperwork inside a residence occupied by Mr. Taylor and his family."  PSR ¶¶ 13, 27, 35.  The PSR also indicates that a confidential informant observed a person he or she believed to be

Taylor selling cocaine at Taylor's residence within 48 hours of the officers' search. These undisputed facts support application of the "fortress theory."

Taylor argues that the gun was in the upper west bedroom of his home whereas the drugs were in the first-floor kitchen and that he obtained the gun because his house was broken into and a Sony PlayStation and PlayStation games were stolen. The proximity of the gun to the drugs and whether the defendant has an innocent explanation for the firearm are both factors to be considered. *Davis*, 372 F. App'x at 629 (noting that we have "stopped short of finding close proximity dispositive"); *United States v. Willis*, 283 F. App'x 368, 370 (6th Cir. 2008) (unpublished decision). *But see McKenzie*, 2011 WL 477738, at *2 (noting that "close proximity between a firearm and drugs will suffice to justify the enhancement when an offender is engaged in drug trafficking"). However, the type of firearm and whether it is loaded are also considerations, *Willis*, 283 F. App'x at 370, and these factors weigh against Taylor. Thus, although the firearm was not found in the same room as the drugs (and thus arguably not in close proximity), the fact that Taylor was trafficking drugs from his house and the fact that the firearm was loaded and found on the bedroom floor support the theory that Taylor was emboldened in his trafficking by having the firearm in the house.

Additionally, Taylor's explanation for the gun does not necessarily undercut the "fortress theory." "[A]n alternative explanation for the presence of a gun does not preclude that gun from *also* being used to facilitate a drug offense." *United States v. Oglesby*, 210 F. App'x 503, 507 (6th Cir. 2007) (unpublished decision). Moreover, Taylor obtained the gun to protect himself and his possessions, which included a valuable quantity of cocaine base and cash, from future break-ins to his home. "When one is in possession of a large and valuable stash of drugs, the desire to protect these illicit substances can be compelling." *Ennenga*, 263 F.3d at 504; *cf. McKenzie*, 2011 WL 477738, at *3 (rejecting application of the "fortress theory" when the defendant possessed only a small amount of marijuana meant for personal use and there was no evidence that he was engaging in trafficking of marijuana).

*United States v. Goodman*, 519 F.3d 310, 321 (6th Cir. 2008), the case on which Taylor relies, is distinguishable because the "fortress theory" was not applicable. The defendant in that case admitted to possessing a firearm found in someone else's home, and the government had not shown a connection between that firearm and the alleged drug trafficking that took place in a nearby park. *Id.* at 321–23. "[B]ecause there [was] no evidence connecting the firearm to the drug trafficking, there [was] no evidence to suggest that [the defendant's] subsequent possession of a firearm was anything more than an unfortunate coincidence." *Id.* at 323. Here, the facts supporting the "fortress theory" provide the evidence connecting the firearm to the drug trafficking.[10] We give due deference to the district court's determination that the government has sufficiently established, by a preponderance of the evidence, a nexus between the firearm and the delivery-of-cocaine-base felony. We thus affirm the district court's application of § 2K2.1(b)(6).

## B.  Substantive Reasonableness

Taylor argues that his sentence was substantively unreasonable for a number of reasons, many of which overlap with his procedural arguments. Because we vacate the sentence for resentencing in light of *Pepper*, we decline to address Taylor's substantive challenge to his sentence at this time.

## III.  CONCLUSION

For the reasons explained above, we **VACATE** the sentence and **REMAND** the case to the district court for de novo resentencing consistent with this opinion.

---

[10]The government also argues that Taylor's exchange of drugs for the gun establishes the necessary connection, but, in an analogous context, the Supreme Court has distinguished when the defendant exchanges his gun to receive drugs (satisfies "use" within the meaning of § 924(c)(1), *Smith v. United States*, 508 U.S. 223, 241 (1993)) from when the defendant exchanges drugs to receive a gun (does not satisfy "use" under § 924(c)(1), *Watson v. United States*, 552 U.S. 74, 83 (2007)). The Seventh Circuit case cited by the government, *United States v. Lang*, 537 F.3d 718 (7th Cir. 2008), involved a defendant who exchanged his firearm for drugs and thus is not persuasive here.