**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0704n.06

No. 10-5284

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Oct 06, 2011***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARIO ABRAM | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

SUTTON, Circuit Judge. Mario Abram had a .38 caliber revolver under the driver's seat of his car when he drove to collect a drug debt. Because the district court reasonably concluded that Abram possessed the gun in connection with another felony offense, we affirm his sentence.

I.

Two men tried to break down Anita Edwards' front door on July 1, 2008. She called the Memphis police. When officers arrived, they saw Mario Abram and another man running from the rear of the house toward a black 2008 Kia parked in the driveway. Further investigation revealed that the car had been stolen from Hertz Rent-A-Car. One of the officers stopped Abram just before he reached the driver's side door and placed him under arrest. During a pat-down of Abram, the

---

[*]The Honorable John. R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

officer discovered a counterfeit $100 bill and a bag containing 4.5 grams of crack cocaine and 2.9 grams of powder cocaine in his pockets. Another officer searched the car and found a bag with 1.3 grams of marijuana in the driver's side door and a loaded .38 caliber revolver under the driver's seat. After placing Abram and his accomplice in the squad car, the officers spoke with Ms. Edwards. She said that Abram was one of her boyfriend's drug suppliers and that he had come to her house to collect a debt.

A federal grand jury indicted Abram for being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Abram pled guilty and signed a written plea agreement in which the government stipulated that none of the § 2K2.1(b) sentencing enhancements applied and agreed to a sentence of 60 months. *See* Fed. R. Crim. P. 11(c)(1)(C). The district court disagreed with the recommendation. It applied the four-level enhancement under § 2K2.1(b)(6), applicable when a defendant uses a firearm in connection with another felony. After subtracting three levels for acceptance of responsibility, the adjustment created an offense level of 23, which intersected with Abram's criminal history category (VI) to create a guidelines range of 92 to 115 months. Because the agreed-upon 60-month sentence was well below this range and because the district court did not find "justifiable reasons" for the departure, it rejected the plea agreement and restored the case to the trial docket. *See* U.S.S.G. § 6B1.2(c).

Abram pled guilty again, this time without a written plea agreement. During the plea colloquy, Abram admitted he went to Ms. Edwards' house "to collect a debt, and there was a gun in the car." R. 64 at 12. At his (second) sentencing hearing, the court concluded that the

§ 2K2.1(b)(6) enhancement applied because Abram possessed the firearm in connection with a drug trafficking offense. This adjustment (again) yielded a guidelines range of 92 to 115 months. After a lengthy discussion of the § 3553(a) sentencing factors, the court imposed a 108-month sentence.

II.

*Proper four-level enhancement.* Section 2K2.1(b)(6) calls for a four-level sentencing enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Application of this enhancement is appropriate if the district court determines by a preponderance of the evidence, *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006), that: (1) the defendant committed "another felony offense," meaning "any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained," U.S.S.G. § 2K2.1 cmt. n. 14(C); and (2) the defendant "used or possessed [a] firearm or ammunition in connection with" that other offense, U.S.S.G. § 2K2.1(b)(6). We review factual findings for clear error and accord "due deference" to the district court's conclusion that a defendant used or possessed a firearm in connection with another felony offense. *United States v. Taylor*, 648 F.3d 417, 430–32 (6th Cir. 2011).

Ample evidence supports the court's conclusion that Abram committed another felony offense. Officers found 4.5 grams of crack cocaine and 2.9 grams of powder cocaine in Abram's pockets and 1.3 grams of marijuana in the car. Abram also had a counterfeit $100 bill, not the kind of thing generally found in a law-abiding citizen's wallet. Ms. Edwards told the authorities that

Abram was her boyfriend's drug supplier, and most incriminating of all Abram admitted that he went to Edwards' house to collect a debt. From this evidence, the district court reasonably could conclude that Abram had distributed drugs in the past and that he intended to distribute the drugs found in his possession in the future. Both actions amount to felonies under federal and state law. *See* 21 U.S.C. § 841(a)(1); Tenn. Code Ann. § 39-17-417(a).

The evidence also supports the court's conclusion that Abram possessed the .38 caliber revolver in connection with his felony drug offense, as the "nexus" between the firearm and the offense was hardly "coincidental." *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009). Officers found the weapon under the driver's seat of the car that Abram drove to collect a drug debt from a delinquent customer, all of which had the potential to facilitate collection of the debt. Collection of the debt, in turn, was necessary to Abram's drug dealing, as a dealer unwilling to collect debts from his customers will not last long. Just as the operator of an illegal chop-shop who had a gun to deal with belligerent customers possessed the weapon in connection with another felony offense, *United States v. Rogers*, 594 F.3d 517, 522 (6th Cir. 2010), *vacated on other grounds*, 131 S. Ct. 3018 (2011), so too was it reasonable for the court to conclude that Abram possessed this gun in connection with his drug-distribution activities.

*No interference with plea negotiations.* Abram next claims that, by rejecting the 60-month sentence specified in the first plea agreement, the district court interfered with the plea negotiations. Yet district courts have an "independent obligation" to evaluate a sentence agreed to in a Rule 11(c)(1)(C) plea agreement and to ensure that it is "'sufficient, but not greater than necessary,

to comply with' the purposes of federal sentencing." *Freeman v. United States*, __ U.S. __, 131 S. Ct. 2685, 2692 (2011) (quoting 18 U.S.C. § 3553(a)). Otherwise, sentencing decisions, at least in this context, would be delegated to one private party and one Assistant U.S. Attorney. In exercising the "broad discretion" given to Article III trial judges, not the parties, over sentencing decisions, *United States v. Moore*, 916 F.2d 1131, 1135 (6th Cir. 1990), § 6B1.2(c) of the guidelines tells courts to accept Rule 11(c)(1)(C) plea agreements only if the "agreed sentence is within the applicable guideline range" or if any departure from that range is supported by "justifiable reasons." The district court did just that, concluding that Abram's conduct warranted the four-level enhancement and adding that a 32-month downward departure from the bottom of Abram's guidelines range was not justified. Nothing about this approach unduly interfered with the plea bargaining process; it instead fulfilled the court's independent obligation to ensure that Abram received a proper sentence.

*Reasonable sentence.* Abram also argues that the district court's rejection of the 60-month sentence was procedurally and substantively unreasonable. There are several factors, he says, that should have prompted the district court to approve the 60-month sentence. But none of them demand that conclusion. Here are the factors: (1) the government might have had some proof problems and was unwilling to risk an acquittal (but that is not unusual with plea agreements); (2) Abram waived his right to appeal (but a guilty plea always waives the right to appeal a conviction); (3) the government believed 60 months was a fair and appropriate sentence (but that is always the case with Rule 11(c)(1)(C) plea agreements); and (4) Abram accepted responsibility (but that is already accounted for in the guidelines calculation). On this record and for these reasons, the district

court did not unreasonably conclude that these factors failed to justify a 32-month downward

departure.  No error occurred.

III.

For these reasons, we affirm.