NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0100n.06

**FILED**
Feb 05, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CARL E. HERRON, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    CLAY and ROGERS, Circuit Judges, and LUDINGTON, District Judge.[*]

ROGERS, Circuit Judge.  Carl E. Herron appeals his conviction and sentence of 51 months for two counts of possession with intent to distribute and one count of felon in possession of a firearm.  Herron argues that some evidence should have been suppressed, that the district court made incorrect evidentiary rulings, that there was insufficient evidence to convict, that there was insufficient evidence to apply certain sentencing enhancements, and that the sentence was substantively unreasonable.  Because the search of what appears to have been Herron's residence was legal and that search produced ample evidence that Herron was in possession of drugs and twelve firearms, there was sufficient evidence to convict Herron and to apply the challenged sentencing enhancements.  The other claims also lack merit.

In July 2009, Sergeant Chris Long, as a member of the Jackson-Madison County Metro Narcotics Unit, received information from a confidential informant that Herron was selling

---

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

illegal narcotics. Sergeant Long, assisted by other members of the unit, conducted a controlled buy, during which the informant purchased crack cocaine from Herron at 512 Greenwood Avenue in Jackson, Tennessee. This controlled buy was recorded on audio and video. Sergeant Long also found that two cars parked in the driveway were registered to Herron and that the utilities for the residence were in Herron's name. Sergeant Long then drafted an affidavit in support of a search warrant, which requested authority to search the person of Carl E. Herron and the premises of 512 Greenwood on probable cause for possession of illegal controlled substances and, in support of the request, stated:

> that Affiant has RECEIVED INFORMATION FROM A RELIABLE CONFIDENTIAL INFORMANT WHO HAS OBSERVED CRACK COCAIN ON THE PREMISES OF 512 GREENWOOD JACKSON, TN 38301 IN THE PAST SEVENTY-TWO HOURS. THIS INFORMANT HAS BEEN PROVEN RELIABLE BY MAKING AT LEAST EIGHT CONTROLLED PURCHASES UNDER THE DIRECTION OF JACKSON-MADISON COUNTY METRO NARCOTICS UNIT. THIS INFORMANT IS RESPONSIBLE FOR THE SEIZURE OF APPROXIMATELY 4.9 GRAMS OF CRACK COCAINE. THIS CONFIDENTIAL INFORMANT HAS PURCHASED AN AMOUNT OF CRACK COCAINE FROM 512 GREENWOOD WITHIN THE LAST 72 HOURS. THIS ADDRESS HAS BEEN CONFIRMED BY JACKSON ENERGY AUTHORITY.

When presenting the affidavit to the issuing judge, Sergeant Long discussed the circumstances of the controlled buy. The judge signed the warrant on July 10, and the warrant was executed on July 14.

When Sergeant Long and his team executed the search warrant, they found in the house "numerous handguns, large amount of crack cocaine, as well as a large amount of powder cocaine" and "several hundred dollars." The powder cocaine was discovered in a small bag on a shelf in the laundry room. In the attic, which appeared to be used as a bedroom, the officers located a black cargo bag that contained ten firearms. Two other firearms, one of which was loaded, were discovered on the first floor. It appeared that someone was living in the house,

because it "was fully furnished, food there, furniture there, . . . utilities were on." There were "toys and play things . . . in the backyard," "food in the cabinets and the refrigerator," and "[t]he master bedroom was . . . fully furnished, bed, dressers . . . personal items as far as personal care products, money, safe, utility bills, things of that nature."

Another search warrant was executed on October 7, 2009. This time, the searching officers found Herron sleeping in the bed in the master bedroom with his minor daughter, as well as 1.7 grams of crack cocaine elsewhere in the house. As a result of this arrest, Herron pled guilty in state court to charges of misdemeanor possession and possession of drug paraphernalia.

On October 10, a grand jury filed an indictment against Herron for being a felon in knowing possession of seven firearms, in violation of 18 U.S.C. §§ 922(g) and 924(a), (e). A superseding indictment dated April 19, 2010, added two additional counts for knowingly possessing with intent to distribute 19.1 grams of crack cocaine and 31.6 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Herron pled not guilty and a jury trial commenced.

At trial, Timothy Spencer testified that from April to July of 2009, he exchanged stolen guns with Herron for crack cocaine and cash. Spencer identified the seven weapons introduced into evidence as the ones that he had traded, and he confirmed that Herron was the man with whom he had exchanged the firearms and that he had done so at 512 Greenwood.

Herron's counsel attempted to introduce certified copies of affidavits of complaint, indictments, and judgments of conviction against Herron's next-door neighbors for possession of crack cocaine. The officers searching 512 Greenwood also happened to arrest people at 510 Greenwood Avenue while they were searching for Herron, who was not at 512 Greenwood when they searched it. The district court called the officers' arrest for possession of crack cocaine at 510 Greenwood "serendipity," and questioned the relevance of the arrests to the accusations

against Herron. Herron's counsel argued that these arrests went to the defense's theory of the case, namely, that Herron only used the house for storage and that others who had access to the house were storing their drugs and guns inside. The court held the request in abeyance so that the defense could provide further proof that would link the arrests from 510 Greenwood to 512 Greenwood, and at the conclusion of the defense's case the court held that the evidence should not be admitted.

The jury convicted Herron on all three counts. The Presentence Report calculated a total offense level of 24, which provided a Guideline sentencing range of 51–63 months. This calculation included a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(1)(B) because the offense involved between eight and twenty-four firearms. The calculation also included a four-level increase pursuant to § 2K2.1(b)(6) because Herron possessed a firearm in connection with another felony offense, namely possession with intent to distribute. Herron objected to these enhancements, arguing that his sentence should be enhanced based only on the seven firearms presented at trial and that there was insufficient evidence to conclude that he possessed any firearms in connection with the felony drug offenses. A second addendum to the Presentence Report elaborated:

> Narcotics were found in several rooms on the first floor of the residence, the master bedroom, the kitchen, and the laundry room. Ten of the firearms were reportedly found on the second floor of the home. However, two firearms, both pistols, were found in a hall closet on the first floor. One of the pistols was loaded with eight rounds.

The court applied both enhancements, finding that a preponderance of the evidence showed that Herron possessed at least eight firearms and that, because the pistols in the first-floor hallway were in close proximity to the drugs, a preponderance of the evidence showed that the guns were used in connection with the drug offenses. Herron was sentenced to 51 months,

the lowest sentence in the applicable Guideline range, with each count to run concurrently. Following his sentencing, Herron appealed.

There is no basis for reversing the district court's judgment.

First, the district court did not err in denying the defendant's motion for judgment of acquittal, because, viewing the evidence in the light most favorable to the prosecution and making all inferences in favor of the jury's verdict, there was sufficient evidence for a reasonable fact-finder to find guilt beyond a reasonable doubt. *See United States v. Ramirez*, 635 F.3d 249, 255 (6th Cir. 2011) (stating standard); *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (same). Drugs and weapons were recovered in various locations throughout the house. The controlled buy produced video and audio evidence that Herron was selling crack cocaine out of the residence. There was considerable evidence that Herron actually resided in the house: furniture, food, and personal effects were scattered throughout the house, the utilities were running in his name, and cars registered to him were parked in the driveway. The jury could easily infer that 512 Greenwood was Herron's home and that Herron was in possession of all of the drugs and guns found there. For the same reasons, Herron's claim that there was insufficient evidence to sustain the verdict fails.

Second, the district court did not err in denying the motion to suppress the evidence obtained from the July 14 search, because under the totality of the circumstances, and especially considering the "veracity, reliability, and the basis of knowledge" for the confidential informant's tip, the affidavit stated sufficient evidence to create probable cause to believe that there were drugs at 512 Greenwood Avenue. *See generally United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). Here, the informant had proven his or her reliability by conducting at least eight controlled purchases under the direction of the narcotics unit. It is well established that

"information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause." *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) (citing *McCray v. Illinois*, 386 U.S. 300, 302–04 (1967)). In addition, the affidavit establishes that the confidential informant had within the previous three days purchased crack cocaine from someone at 512 Greenwood and that Sergeant Long had corroborated Herron's connection to the house through the utilities company. Although the affidavit is not thorough—it neither mentions that the recent transaction was a recorded controlled buy nor describes all of Sergeant Long's corroboration—it states sufficient evidence to establish probable cause.

Third, the district court did not abuse its discretion in refusing to admit as evidence the documentary evidence of the neighbors' crack-cocaine offenses, because under the circumstances Herron failed to make more than a merely hypothetical connection between the drug offenses at 510 Greenwood and the drugs at his own house. *See United States v. Yu Qin*, 688 F.3d 257, 261 (6th Cir. 2012) (stating abuse-of-discretion standard). For one, it is not plausible that drug traffickers would hide their own valuable drugs and weapons in someone else's house. Also, the form of evidence was not particularly enlightening, since there could be no elaboration or cross-examination of the bare-bones documents that Herron attempted to submit into evidence. In any event, because the evidence against Herron firmly established that he was in possession of drugs and weapons at 510 Greenwood, any error was harmless because it did not materially affect the verdict. *See United States v. Baker*, 458 F.3d 513, 520 (6th Cir. 2006) (stating standard). It would have required some speculative inferences on the part of the jury to believe Herron's alibi that the next-door neighbors were storing drugs and guns on his property without his knowledge. The jury probably found implausible Herron's testimony that he was not living at 512 Greenwood and kept the back door unlocked, because the house

contained valuable items, including several TVs and furniture, the utilities were running in his name, and there were personal effects indicating that someone actually lived at the house. It is unlikely that the mere presence of crack cocaine in the house next door would have swayed the jury to believe Herron's theory of the case.

For Herron's last three claims of error, each regarding the district court's application of the Sentencing Guidelines, the same deferential standard of review applies. "We review de novo a district court's application of the Sentencing Guidelines when that application involves mixed questions of law and fact . . . and we review for clear error a district court's findings of fact in connection with the sentencing." *United States v. Stafford*, 721 F.3d 380, 400 (6th Cir. 2013). In applying the Sentencing Guidelines, judicial fact-finding is permitted, and a judge must find facts supporting a sentencing calculation by a preponderance of the evidence. *Id.* at 402.

As to the fourth claim of error, the district court did not err by increasing Herron's base offense level by four under U.S.S.G. § 2K2.1(b)(1)(B), because, although the indictment stated that Herron had seven weapons, there was sufficient evidence for the sentencing judge to find by a preponderance of the evidence that Herron knowingly possessed at least eight firearms. Herron concedes that the searching officers found twelve handguns in his residence. The seven handguns for which Herron was convicted were discovered in a cargo bag with three more handguns. Two more guns, one of which was loaded, were found downstairs. Because the jury found beyond a reasonable doubt that Herron knowingly possessed seven of the firearms found in the cargo bag, it follows quite readily that a preponderance of the evidence shows that he knowingly possessed at least one of the other three in the cargo bag. This is enough to raise the count to eight firearms, and the four-level enhancement was accordingly appropriate.

Fifth, the district court did not err in increasing Herron's base offense level by four levels pursuant to U.S.S.G. § 2K2.1(b)(6), because there was sufficient evidence for the sentencing judge to find that Herron possessed at least one of the firearms in 512 Greenwood in connection with his drug-trafficking offenses. Because Herron lived in a fairly small house, all of the guns, even those in the attic-space bedroom, were in relatively close proximity to the drugs. Most importantly, the loaded firearm was located on the first floor where the drugs and drug paraphernalia were located. The most likely reason that Herron possessed the loaded weapon was to protect himself during potentially dangerous drug transactions. Herron provides no alternative explanation for his possession of the firearms except for the doubtful assertion that Timothy Spencer was storing them in the house without Herron's knowledge or consent. Under the fortress theory, "a sufficient connection is established if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) (quoting *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001)) (internal quotation marks omitted); *see also United States v. Taylor*, 648 F.3d 417, 432–33 (6th Cir. 2011). The district court did not commit clear error in discrediting Herron's assertion that Spencer was secretly storing the guns in the house, especially in light of Spencer's contradictory testimony that he exchanged the guns with Herron for crack cocaine and cash. According the district court the "due deference" the law requires on our review, *id.* at 432, we cannot say that the district court clearly erred in finding that Herron possessed at least one of the firearms in connection with his possession of cocaine with intent to distribute.

Sixth and finally, the district court did not abuse its discretion by sentencing Herron to 51 months of incarceration. Since there was no procedural error, we may only consider "the substantive reasonableness of the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007). Based on the § 3553(a) factors and the presentence report, as well as comments by Herron's defense counsel and Herron himself, the court imposed the minimum applicable Guideline sentence. There being no indication that the district court relied on impermissible factors in arriving at its sentence, the district court clearly did not abuse its discretion in applying the lowest sentence in the proper Guideline range. *See, e.g.*, *United States v. Carson*, 560 F.3d 566, 586–87 (6th Cir. 2009).

For the foregoing reasons, the district court's judgment is affirmed.